Approved: \_\_\_\_/s/_____
JUSTIN HORTON / ALEXANDRA S. MESSITER
Assistant United States Attorneys

Before: THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York

------------------------------------------------------- X
:
UNITED STATES OF AMERICA :     **23 MAG 4331**
:
- v. -                          :     **SEALED COMPLAINT**
:
FRANK DIPIETRO, VINCENT CERCHIO, :    Violations of 18 U.S.C.
MICHAEL SELLICK, and VINCENT    :     §§ 1951 and 924(c)
SPAGNUOLO,                       :
:    COUNTY OF OFFENSE:
Defendants.                :    New York
:
------------------------------------------------------- X

SOUTHERN DISTRICT OF NEW YORK, ss.:

STEPHEN JONES, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE
(Conspiracy to Commit Hobbs Act Robbery)

1. In or about January 2023, in the Southern District of New York and elsewhere, FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT SPAGNUOLO, the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, DIPIETRO, CERCHIO, SELLICK, and SPAGNUOLO, and others conspired to commit an armed robbery of a jewelry company in New York, New York, on or about January 3, 2023.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
(Hobbs Act Robbery)

2. On or about January 3, 2023, in the Southern District of New York and elsewhere, FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT SPAGNUOLO, the defendants, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce

and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, DIPIETRO, CERCHIO, SELLICK, and SPAGNUOLO committed, and aided and abetted the commission of, an armed robbery of a jewelry company in New York, New York, on or about January 3, 2023.

(Title 18, United States Code, Sections 1951 and 2.)

### COUNT THREE
(Brandishing a Firearm)

3. On or about January 3, 2023, in the Southern District of New York and elsewhere, FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT SPAGNUOLO, the defendants, and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery charged in Count Two of this Complaint, knowingly used and carried a firearm, and, in furtherance of such crime, possessed a firearm, and aided and abetted the use, carrying, and possession of a firearm, which was brandished.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and (ii), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Detective with the NYPD. I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

The January 3, 2023 Armed Robbery

5. Based on my review of law enforcement reports and my participation in a witness interview, I have learned the following:

  a. A jewelry company ("Jewelry Company-1") has an office in the penthouse of a building located on Madison Avenue between East 60th and East 61st Streets, in New York, New York (the "Building"). Jewelry Company-1 does not have a storefront on street level and admits customers to its office by appointment only. However, Jewelry Company-1 has a display case on street level, visible from Madison Avenue, into which an employee of Jewelry Company-1 ("Employee-1") routinely puts select items of jewelry between approximately 10:00 a.m. and 11:00 a.m. on Mondays through Thursdays. In order to place items of jewelry in the display case, Employe-1 routinely removes the items from a safe, brings the items downstairs to the lobby of the Building, disables an alarm located in a closet in the lobby, and then opens the display case to insert the items.

6. Based on my participation in a witness interview and my review of surveillance footage from inside the lobby of the Building, I have learned the following:

a. On or about January 3, 2023, at approximately 10:20 a.m., Employee-1 removed three items of jewelry (the "Jewelry Items") from a safe, brought the Jewelry Items downstairs to the lobby of the Building in a black tray, and disabled the alarm located in a closet in the lobby. When Employee-1 was walking to the display case to insert the items, two robbers entered the lobby. One of the robbers ("Robber-1") was armed with a firearm and wearing an orange construction jacket with reflective strips, a yellow hat, a black mask, gloves, jeans, and black and white sneakers. Robber-1 stated to Employee-1, in sum and substance, "Give it to me," while pointing the firearm at Employee-1. Robber-1 then took the Jewelry Items and fled from the lobby. The second robber, who was wearing a yellow construction jacket with reflective strips, dark hood, mask, and gloves, stated to Employee-1, in sum and substance, "Turn around and get in the closet." The second robber then fled from the lobby.

b. An image from surveillance video from inside the lobby of the Building at the time of the robbery is copied below:



The Identification of the Defendants

7. Based on my review of surveillance video from the vicinity of the Building, I have learned that surveillance video shows that, at approximately 9:50 a.m. on January 3, 2023 – that is, the morning of the robbery – the robbers arrived in the area of the Building in a gray Ford Escape (the "Gray Ford Escape"), with certain damage to the body of the vehicle. The robbers, who were dressed as construction workers as described above, stood near a construction site in the vicinity of that location before entering the lobby of the Building to commit the robbery at approximately 10:22 a.m.

8. Based on my review of surveillance video from the vicinity of East 56th Street between Fifth Avenue and Madison Avenue in New York, New York, I have learned that surveillance video shows the robbers, along with another individual ("Robber-2") who was wearing a red jacket and black hat, variously entering and exiting a gray Ford F-150 pickup truck

(the "Pickup Truck") bearing New Jersey license plate number OE1253 between approximately 5:00 a.m. and 9:50 a.m. on January 3, 2023 – that is, on the morning of the robbery in the hours preceding the robbery. Based on my review of New Jersey Motor Vehicle Commission records, I have learned that the Pickup Truck is registered to VINCENT SPAGNUOLO, the defendant.

9. Based on my review of surveillance video from a Metropolitan Transit Authority bus, I have learned that surveillance video shows that at approximately 10:19 a.m. on January 3, 2023 – that is, on the morning of the robbery, approximately three minutes before the start of the robbery – the Pickup Truck was double parked on Madison Avenue in the vicinity of East 61st Street – that is, approximately one block from the robbery location.

10. Based on my review of NYPD records, I have learned that on or about December 3, 2021, VINCENT SPAGNUOLO, the defendant, was stopped by the NYPD while driving the Pickup Truck (the "Traffic Stop"). Based on my review of NYPD body-worn camera footage from the Traffic Stop, I have learned that, during the Traffic Stop, SPAGNUOLO was wearing a red jacket. Based on my comparison of still images taken from the surveillance video described in paragraph 8, with still images taken from NYPD body-worn camera footage, I believe that Robber-2 is SPAGNUOLO. In particular, Robber-2 is captured on surveillance video getting out of the Pickup Truck registered to SPAGNUOLO wearing the same red jacket as the red jacket worn by SPAGNUOLO while driving the Pickup Truck during the Traffic Stop. Copied below are a still image from the surveillance video described in paragraph 8 showing Robber-2 and a still image taken from NYPD body-worn camera footage during the Traffic Stop showing SPAGNUOLO:

 

11. Based on my review of photographs posted on a publicly-available social media page, I further believe that Robber-2 is SPAGNUOLO. In particular, Robber-2 is captured on surveillance video getting out of the Pickup Truck registered to SPAGNUOLO wearing a black hard hat that appears to be the same black hard hat worn by SPAGNUOLO in publicly-available social media photographs. Copied below are a still image from the surveillance video showing Robber-2 and a publicly-available social media photograph of SPAGNUOLO:

4




12. Based on my review of surveillance video from a deli ("Deli-1") located in the vicinity of West 56th Street between Fifth and Sixth Avenues in New York, New York – approximately six blocks from the robbery location – I have learned that surveillance video shows that Robber-1 and another individual entered Deli-1 at approximately 9:01 a.m. on January 3, 2023 – that is, on the morning of the robbery approximately one hour and twenty-one minutes prior to the robbery. Upon entering Deli-1, Robber-1 was wearing clothing that appears to be the same as the clothing worn during the robbery, namely, an orange construction jacket with reflective strips, a yellow hat, jeans, and black and white sneakers, as well as a black mask that Robber-1 removed shortly after entering Deli-1. Based on my comparison between the surveillance video inside Deli-1 showing Robber-1 and a law enforcement photograph of FRANK DIPIETRO, the defendant, I believe that Robber-1 is DIPIETRO. Copied below are still images from the surveillance video inside Deli-1 showing Robber-1 and a law enforcement photograph of DIPIETRO:




5

 

13.     Based on my review of New York Department of Motor Vehicle records, I have learned that a gray Ford Escape bearing New York license plate number KVD6888 is registered to VINCENT CERCHIO, the defendant. Based on my participation on or about January 20, 2023 in conducting surveillance at the home address in Queens, New York listed in law enforcement databases for CERCHIO, I have learned that the Ford Escape registered to CERCHIO, which was in the driveway at that address, has body damage consistent with the Gray Ford Escape used in connection with the robbery as described in paragraph 7. Accordingly, I believe that the Ford Escape registered to CERCHIO is the same vehicle as the Gray Ford Escape used in connection with the robbery.

14.     Based on my review of license plate reader records, I have learned that on January 2, 2023 – that is, the day before the robbery – the Gray Ford Escape crossed the Brooklyn Bridge from Brooklyn to Manhattan at approximately 4:18 a.m., before driving north on the FDR Drive. At approximately 11:23 a.m., the Gray Ford Escape drove south on the FDR Drive before crossing over the Brooklyn Bridge toward Brooklyn at approximately 11:25 a.m. and, subsequently, crossing over the Verrazano Bridge toward Staten Island at approximately 11:38 a.m. Based on my review of surveillance video, I have learned that surveillance video in the vicinity of Fifth Avenue and 56th Street in New York, New York, shows both the Gray Ford Escape and the Pickup Truck parked near that location on January 2, 2023 at approximately 4:31 a.m. At approximately 4:34 a.m., the driver of the Gray Ford Escape entered the Pickup Truck, and the Pickup Truck then proceeded to drive past the Building – *i.e.*, the location of the robbery the following day. When in front of the robbery location, the Pickup Truck briefly turned on its hazard lights and drove in reverse, before continuing to drive north on Madison Avenue. Subsequently, at approximately 10:49 a.m., the Gray Ford Escape also drove past the Building. Based on my training and experience, I believe that this incident the day before the robbery is consistent with a "casing" of the robbery location.

15.     Based on my review of surveillance video from the vicinity of Fifth Avenue and 56th Street in New York, New York, I have learned that surveillance video from the morning of January 2, 2023 – that is, the day before the robbery – around the times of the "casing" described above shows two individuals who had been inside the above-referenced vehicles walking in the

6

vicinity of Fifth Avenue and 56th Street.[1]  At certain points, one of those individuals appears to be wearing a yellow hat and dark sneakers with light soles consistent with the yellow hat and dark sneakers with light soles worn by Robber-1 during the robbery.  Moreover, at certain points, one of those individuals appears to be wearing an orange construction jacket with reflective strips consistent with the orange jacket worn during the robbery, which he subsequently handed off to the first individual.  Copied below is a still image from surveillance video showing the two individuals walking in the vicinity of Fifth Avenue and 56th Street the day before the robbery wearing the yellow hat and orange jacket described above:



16.     Based on my review of information from law enforcement databases, I have learned that the NYPD Facial Identification Section, using digital facial recognition technology, generated possible facial recognition matches between the two individuals walking in the vicinity of Fifth Avenue and 56th Street the day before the robbery, as described above, and law enforcement photographs of FRANK DIPIETRO and VINCENT CERCHIO, the defendants.  Based on my own comparison between the still images from surveillance video showing the two individuals in the vicinity of Fifth Avenue and 56th Street, and law enforcement photographs of DIPIETRO and CERCHIO, I believe that the individuals captured on the aforementioned surveillance video are DIPIETRO and CERCHIO.  Copied below are still images from surveillance video showing DIPIETRO (top row) and CERCHIO (bottom row) in the vicinity of Fifth Avenue and 56th Street, and law enforcement photographs of DIPIETRO (top row) and CERCHIO (bottom row):

---

[1] In addition, surveillance footage from inside of Deli-1—the deli that certain of the robbers visited on the morning of the robbery, as described in Paragraph 12—shows that the two individuals described above also visited Deli-1 together the morning of January 2, the day before the robbery.



17.     Based on my review of information contained in phone subscriber records and information pertaining to FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT SPAGNUOLO, the defendants, in law enforcement databases, I have learned that the defendants are the users of cellphones to which certain call numbers are assigned (respectively, the "DIPIETRO Phone," the "CERCHIO Phone," the "SELLICK Phone," and the "SPAGNUOLO Phone"). On or about February 14, 2023, the Honorable Stewart D. Aaron authorized warrants for historical location information and toll records for the DIPIETRO Phone, the CERCHIO Phone, the SELLICK Phone, and the SPAGNUOLO Phone (the "February 14 Warrants").

18.     Based on my review of records provided by Verizon and T-Mobile pertaining to the DIPIETRO Phone, the CERCHIO Phone, the SELLICK Phone, and the SPAGNUOLO Phone, I have learned that FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT SPAGNUOLO, the defendants, were in frequent communication with each other around the date of the robbery, including as follows:

   a.     Between December 25, 2022 and January 15, 2023 – that is, during the period approximately one-and-a-half weeks before and one-and-a-half weeks after the robbery – the DIPIETRO Phone was in communication with the CERCHIO Phone approximately 102 times, with the SELLICK Phone approximately 49 times, and with the SPAGNUOLO Phone approximately 151 times. Additionally, during the same period, the CERCHIO Phone was in

8

communication with the SPAGNUOLO Phone approximately 9 times, and with the SELLICK Phone approximately 4 times. Finally, during the same period, the SPAGNUOLO Phone was in communication with the SELLICK Phone approximately 3 times.

    b.  On or about January 3, 2023 – that is, the day of the robbery – the DIPIETRO Phone was in communication with the CERCHIO Phone approximately 12 times, with the SELLICK Phone approximately 4 times, and with the SPAGNUOLO Phone approximately 9 times. Additionally, on the same day, the CERCHIO Phone was in communication with the SPAGNUOLO Phone approximately 4 times. Finally, on the same day, the SPAGNUOLO Phone was in communication with the SELLICK Phone approximately 3 times.

    c.  In particular, at approximately 2:43 a.m. on January 3, 2023 – that is, the morning of the robbery – the CERCHIO Phone called the DIPIETRO Phone. Further, at approximately 3:19 a.m. on the morning of the robbery, the DIPIETRO Phone called the SELLICK Phone. At approximately 3:56 a.m. on the morning of the robbery, the CERCHIO Phone called the DIPIETRO Phone and, approximately one minute later, at approximately 3:57 a.m., the DIPIETRO Phone called back the CERCHIO Phone. At approximately 4:46 a.m. on the morning of the robbery, the SELLICK Phone called the SPAGNUOLO Phone. At approximately 5:17 a.m. on the morning of the robbery, the SPAGNUOLO Phone called the DIPIETRO Phone. At approximately 7:08 a.m. on the morning of the robbery, the SELLICK Phone called the SPAGNUOLO Phone. At approximately 8:20 a.m. on the morning of the robbery, the DIPIETRO Phone called the SPAGNUOLO Phone.

  19.  Further, based on my review of historical cell site information obtained pursuant to the February 14 Warrants, I have learned that the SELLICK Phone, the DIPIETRO Phone, and the SPAGNUOLO Phone were each located in the vicinity of the Building in New York, New York – that is, the location of the robbery – on the morning of January 3, 2023, that is, the morning of the robbery. Specifically, the SELLICK Phone received approximately four phone calls between approximately 8:06 a.m. and 9:26 a.m. on the morning of January 3 while located in the vicinity of the Building. The DIPIETRO Phone received or placed approximately four phone calls between approximately 5:16 a.m. and 9:48 a.m. on the morning of January 3 while located in the vicinity of the Building, including two calls with the SPAGNUOLO Phone and one unanswered outgoing call to the CERCHIO Phone. The SPAGNUOLO Phone received or placed approximately four phone calls between approximately 5:17 a.m. and 8:22 a.m. on the morning of January 3 while located in the vicinity of the Building, including two calls with the DIPIETRO Phone and one call with the SELLICK Phone.[2]

  20.  Based on my review of surveillance video from a United Parcel Service truck parked behind the Gray Ford Escape at the time of the robbery on January 3, 2023, I know that the Gray Ford Escape bore a different New York license plate number at the time of the robbery (the "Swapped License Plate"). Based on my review of law enforcement reports and my participation

---

[2] Based on my review of historical cell site information obtained pursuant to the February 14 Warrants, I have also learned that the CERCHIO Phone did not place any outgoing phone calls or answer any incoming phone calls between approximately 3:57 a.m. – when the DIPIETRO Phone called the CERCHIO Phone – and approximately 11:48 a.m., approximately one hour and twenty minutes after the robbery, when the CERCHIO Phone called the DIPIETRO Phone.

in a witness interview, I have learned that the Swapped License Plate was reported stolen on or about January 4, 2023 from a vehicle located in a residential driveway (the "Residential Driveway) in the vicinity of Fort Hamilton Parkway in Brooklyn, New York, and that the owner of the vehicle reported, in sum and substance, that the Swapped License Plate may have been stolen prior to January 4, 2023.

21. Based on my review of surveillance video from the vicinity of the Residential Driveway, I have learned that surveillance video shows two male individuals in the vicinity of the Residential Driveway on the morning of January 3, 2023 – that is, the day of the robbery – before sunrise. One of the individuals is wearing a jacket with reflective strips and dark sneakers with light soles that appear to be consistent with the jacket and sneakers worn by Robber-1 – whom I believe is FRANK DIPIETRO, the defendant, for the reasons set forth above in Paragraphs 12 and 16 – during the robbery. Copied below are a still image from surveillance video from inside the lobby of the Building at the time of the robbery showing DIPIETRO, and still images from surveillance video from the vicinity of the Residential Driveway showing the male individual wearing a jacket with reflective stripes and dark sneakers with light soles (bottom):[3]



---

[3] Based on my review of the surveillance video described above, I have learned that the timestamp on the video reflects that the two men were in the vicinity of the Residential Driveway at approximately 5:06 a.m. on January 3, 2023. However, based on cell site data showing that both MICHAEL SELLICK and VINCENT CERCHIO, the defendants, were in the vicinity of the Residential Driveway well before 5:06 a.m., as described in Paragraph 22, as well as cell site data showing that FRANK DEPIETRO, the defendant, was in midtown Manhattan by approximately 5:16 a.m., as described in Paragraph 19, I believe that the timestamp on the surveillance video is likely ahead of the actual time.

10

 

22.    Based on my review of historical cell site information obtained pursuant to the February 14 Warrants, I have learned that the SELLICK Phone and the CERCHIO Phone were both located in the vicinity of the Residential Driveway before sunrise on January 3, 2023, *i.e.*, the morning of the robbery. In particular, the SELLICK Phone was located in the vicinity of the Residential Driveway at the time of the 3:19 a.m. call from the DIPIETRO Phone, the 4:46 a.m. call to the SPAGNUOLO Phone, and the 7:08 a.m. call to the SPAGNUOLO Phone described above in Paragraph 18(c). In addition, the CERCHIO Phone was located in the vicinity of the Residential Driveway at the time of the 2:43 a.m. call to the DIPIETRO Phone and the 3:56 a.m. and 3:57 a.m. calls to and from the DIPIETRO Phone, respectively, described above in Paragraph 18(c). Further, based on my review of license plate reader records, I have learned that at approximately 4:40 a.m. – that is, approximately six minutes before the SPAGNUOLO Phone received a phone call from the SELLICK Phone while the SELLICK Phone was located in the vicinity of the Residential Driveway – the Pickup Truck driven on the day of the robbery by VINCENT SPAGNUOLO, the defendant, exited on an off-ramp from the Verrazano Bridge in the vicinity of the Residential Driveway.

23.    Based on my review of license plate reader records, I have further learned that, on January 3, 2023, that is, the day of the robbery, prior to the robbery, the Gray Ford Escape, with the Swapped License Plate affixed, crossed the Brooklyn Bridge from Brooklyn to Manhattan at approximately 7:40 a.m., before driving north on the FDR Drive at approximately 7:43 a.m. At approximately 10:51 a.m., approximately 29 minutes after the robbery, the Gray Ford Escape, with the Swapped License Plate affixed, crossed back over the Brooklyn Bridge from Manhattan to Brooklyn. I have also learned that on January 3, 2023 – that is, the day of the robbery, prior to the robbery, the Pickup Truck crossed over the Brooklyn Bridge from Brooklyn to Manhattan at approximately 4:56 a.m., and then was driving on the FDR Drive at approximately 4:58 a.m. At approximately 10:52 a.m., approximately 30 minutes after the robbery, the Pickup Truck was driving south on the FDR Drive, before crossing back from Manhattan to Brooklyn through the Battery Tunnel at approximately 10:54 a.m.

WHEREFORE, the deponent respectfully requests that warrants issue for the arrests of FRANK DIPIETRO, VINCENT CERCHIO, MICHAEL SELLICK, and VINCENT

SPAGNUOLO, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

/s/ Stephen Jones (sworn electronically)
_____
STEPHEN JONES
Detective
New York City Police Department

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1
this <u>24th</u> day of May 2023

_____
THE HONORABLE GABRIEL W. GORENSTEIN
United States Magistrate Judge
Southern District of New York